WILLIAM G. SANDS, Receiver of the Ætna Insurance Company of Utica, *v.* JACOB SANDERS, jun.(*a*)

An assessment, in form, need not specify the name of the party bound to contribute, nor the amount of the note. A general assessment is good by which the receiver declares that each premium note is assessed to the full amount thereof.

When it appears to a receiver, from the liabilities of the company, and the times at which the liabilities accrued, and from an examination of all the classes and notes of the company, that there is no note that is not chargeable, to its entire amount, for liabilities which justly attached during the existence of the policy accompanying such note, a general assessment upon all the notes, without regard to classes, and to their full amount, is unobjectionable.

All the notes of a mutual insurance company constitute its capital, whether they be in one department, or another; and if the necessity exists, resort must be had to the entire fund.

If a company divides its applications for insurance into three classes, one of which is the "hazardous department," and a premium note is in that department, the maker is first liable to contribute for losses in that department; but if the losses do not exhaust such note, what is left is applicable to the payment of losses in the other departments during the running of his policy.

(*a*) Decided April term, 1863.

THIS action was upon a premium note, of which the following is a copy:

"$180.00.   For value received, in policy No. 1477, dated 8th October, 1851, issued by the Ætna Insurance Company of Utica, I promise to pay the said company, or their treasurer for the time being, the sum of one hundred and eighty dollars, in such portions and at such time or times as the directors of said company may, agreeably to their charter and by-laws, require.          JACOB SANDERS, Jr."

The consideration of the note was a policy of insurance, which insured the defendant's property for one year from October 8, 1851. The company was chartered on the 28th March, 1851, under the act entitled "An act to provide for the incorporation of insurance companies," passed April 10, 1849, and was located at Utica, in the county of Oneida. On the 16th January, 1854, an order was made at special term, by Judge PRATT, restraining the company from further exercising its corporate rights, which order directed a reference for the appointment of a receiver, on which reference Edward Eames was appointed receiver. By order of the 19th February, 1855, this court at special term ordered an assessment by said Eames; and notes were by him assessed, including the defendant's note, which was assessed for losses which accrued whilst said note was in force. The assessment was made to pay losses in the hazardous department. This assessment was confirmed, and notice of the assessment was published for three successive weeks in only two daily newspapers in Oneida county. The collection of this assessment was stayed by injunction, in an action brought by Hubbard and Terry against the company and the receiver. The principal ground of the injunction complaint was, that the assessment was made principally to pay losses which had accrued on policies of insurance, for which a premium in cash was paid in lieu of a premium note; which action was

tried on the 27th October, 1856, before Justice Wm. F. Allen, when Mr. Kernan and Mr. Gridley were heard for the plaintiffs, and Mr. Kellogg and Mr. Hunt for the defendants. The court found, as a question of law, that the premium notes were not liable to be assessed for losses arising upon insurances based on a cash premium, and that the said assessment should be set aside and vacated; and it was adjudged that the premium notes were not legally liable to be assessed for claims for losses on policies issued for a cash premium, and the assessment was set aside. But on the 4th Monday of June, 1856, this finding and order, so far as it adjudged to the prejudice of creditors upon the liability of the assets to pay their claims, on motion of said creditors was vacated, (reported 22 Barb. 597,) and the order at special term was affirmed on appeal, and an order was made referring it to Joseph Benedict, as referee, to take proof of the assets of the company and of the claims due from the company, and the creditors were made parties defendant. Not until the 16th June, 1860, was the injunction which stayed the receiver from assessing or collecting notes vacated or modified, when the same was set aside on motion of the attorney for the creditors. This referee notified all the creditors, including this defendant, of the reference to prove claims, and both Mr. Kernan and Judge Gridley attended the reference for Hubbard and Terry and the other note makers, and the losses as adjusted were for losses where premium notes were given to the amount of  .  .  .  .  .  .  $13,025 99
Losses in cash department on policies issued for a
    cash premium only,  .  .  .  .  124,104 60
                                            —————————
                                            $137,130 59

The entire notes of the company, including premium and original stock notes, amounted to $167,428.96.

An order of June 9, 1856, directed the appointment of a receiver in place of said Eames, and said Sands, the plaintiff, was duly appointed. The company was dissolved by judg-

ment, in the case of Thompson and other judgment creditors against the company, and by the said judgment of the 3d Monday of June, 1860, dissolving the company, the plaintiff was confirmed in his appointment as receiver. And the said judgment recognized the claims allowed by said Benedict, referee, and directed the new receiver to adjust and allow claims. The judgment also directed the receiver to make and collect assessments.

The assessment was made on the 23d June, 1860, and each of the premium notes was assessed to the entire amount due thereon, and the assessment was ordered to be paid by the 22d day of August following. The assessment was published as required by the by-laws of the company. The by-laws provided that notice of the assessment be published for three weeks, not less than thirty days prior to the time fixed for payment, in three papers published in Oneida county. Section 8 of the charter provided that any person applying for insurance might pay a cash advance premium and give no premium note. Section 11 allowed the company to divide its applications into classes, and restricted the assessment of premium notes to its class. It does not appear by the by-laws that the company had several departments, and yet practically there were different departments. The assessment was confirmed by order, of the 26th of June, 1860. Personal demand of payment was made of the defendant on the 23d of June, 1862, and the payment was refused.

The note was assessed by this plaintiff to its entire amount, to pay losses which accrued whilst the policy accompanying the same was in force.

The action was tried before a referee, who found that the defendant's note was in the hazardous department, and that the losses which accrued in that department, "and which are due and not paid, for the time the defendant's note and policy were in force, were more than can be collected on the notes of that department, which were in force and were liable

for the losses and expenses which accrued during the year that the defendant's note and policy were in force."

The plaintiff was nonsuited for the reasons,

*First.* That the assessment of the receiver Eames is invalid, as the notice thereof was published in but two newspapers in the county of Oneida.

*Second.* The assessment of the plaintiff of the 23d day of June, 1860, is void, as the same is general, and thereby all the notes in all classes and of all dates were assessed to their full amount.

On appeal at general term, no opinion was delivered by the court, the court regarding a former decision made in the case of this plaintiff against Smith Shoemaker, as controlling this action. The evidence in the Shoemaker case was adopted and made a part of this case, with the same exceptions and rulings.

An appeal was had from the judgment ordered at general term to this court.

*Henry R. Mygatt,* for the appellant.

*Henry P. Townsend,* for the respondent.

WRIGHT, J. The action being upon a premium note of the defendant, an assessment was a necessary condition to its maintenance. In February, 1853, and after the company in which the defendant was insured became insolvent, Eames, the then receiver of such company, assessed the note in action to the amount of $64.57, for losses which accrued while the defendant's policy and note were in full force and effect, and for expenses for which his note was chargeable. The collection of this assessment was stayed by injunction in a suit brought against the company and the receiver, and such injunction was not vacated or set aside until June, 1860. On the 23d of June, 1860, the plaintiff (who before that time had been appointed receiver in the place of Eames) assessed

the defendant's note to its full amount for losses and for expenses and liabilities accrued while the note and policy were in force, and also for expenses and liabilities incurred in executing the plaintiff's trust as receiver, and which expenses were chargeable upon his note. If either of these assessments were regular and valid, the plaintiff was improperly nonsuited.

The only ground for claiming the assessment made by Eames to be illegal, is that notice thereof was published in two newspapers, printed in the county of Oneida. I do not think this was such an irregularity as to invalidate the assessment, and constitute a defense to the action. There was no provision in the charter of the Ætna Insurance Company for giving notice of assessment on the premium notes; but one of its by-laws, adopted in 1851, prescribed the mode, viz: "By publication in *three* newspapers printed in Oneida county, three weeks successively, the last publication of which shall not be less than thirty days prior to the time fixed for payment; and in such other newspapers as the directors or the executive committee may deem necessary or expedient." It is not important now to inquire what would have been the effect of the omission to publish the notice in three newspapers printed in such county, of an assessment made by the directors or a receiver prior to 1853. In 1853, in remodeling the general law for the incorporation of fire insurance companies, the directors of any mutual insurance company were authorized, after ascertaining the loss or damage by fire sustained by any member, or after the rendition of any judgment against the company for loss or damage, "to settle and determine the sums to be paid by the several members thereof, as their respective portions of such loss, *and publish the same in such manner as they shall see fit,* or as the by-laws shall have prescribed." (Laws of 1853, ch. 466, § 13.) The statute thus left the manner of publication of notice of the assessment to the discretion of the directors. They might pursue the mode prescribed by the

by-laws of the company, or any other mode of publication deemed advisable and proper.

Another provision of the statute would seem to strengthen this construction. Assessments are to be paid within thirty days next after publication of the notice; but a neglect or refusal to do so within such time would not put the assessed member in default so that an action could be sustained against him by the directors. Before he is in default, and a right of action upon his note is given to the directors, he must not only have neglected or refused to pay within the time, but there must have been a personal demand for payment of the assessment made upon him, (ch. 466 of Laws of 1853, § 13.) The only object of the publication is to notify the members of the assessment, and the amount they are required to pay, and afford them an opportunity to make payment. All this is effected by the personal demand for payment, required to be made, and hence no injustice could be done by lodging with the directors a discretion as to the manner of publication. It is enough, however, for the purposes of this case, that since the statute of 1853, the directors of a mutual insurance company are not required to publish an assessment for losses in such manner "as the by-laws shall have prescribed," unless they choose to do so. Having authority to publish it, "as they shall see fit," they may adopt a mode of publication other than that prescribed by the by-laws, without invalidating the assessment. It may be conceded that it is a prerequisite to a recovery upon a premium note that there should be a publication of the assessment. But the statute has not restricted the mode of publication, but left it optional with the directors to pursue that prescribed by the by-laws of the company, or such other "as they shall see fit."

The receiver of an insolvent mutual insurance company is clothed with all the powers possessed by the directors for making and collecting assessments, (ch. 71 of Laws of 1852, § 2.) The referee has found that the receiver Eames, in this

case, published the notice of the assessment made by him in but two papers printed in the county of Oneida. The by-laws of the company provided that the publication should be in three newspapers. Eames was no more than the directors would have been, at the time the assessment was made, restricted to the manner of publication prescribed by such by-laws. It is conceded that he published the assessment in two newspapers printed in the county of Oneida; and it was proved and found as a fact by the referee that the defendant was personally notified of it before the action was brought. Having a discretionary power or authority as to the manner of publication, the assessment was not invalid, nor was there a failure to put the defendant in default for not paying, for the reason that the latter was not notified of the assessment through the medium of three, instead of two newspapers printed in the county of Oneida.

The assessment of the receiver Sands was not objectionable, for the reason assigned by the referee. An assessment, in form, need not specify the name of the party bound to contribute, nor the amount of the note. A general assessment is good, by which a receiver declares that each premium note is assessed to the full amount thereof. There is no indefiniteness or uncertainty about it, and the maker of each note is distinctly informed of the sum he is required to pay thereon. It was no objection to the assessment, in this case, that the premium notes in all classes and of all dates were assessed. All the assets of the company that came to the hands of the plaintiff as receiver, were the capital stock notes, amounting to about $100,000, and premium notes of all classes and dates to the amount of $67,000; and these assets were insufficient to pay the losses and expenses due from the company. The company had divided its applications for insurance into three classes, one of which was known as the hazardous department, and the premium note of the defendant was in that department. The amount of losses in the hazardous department, due and unpaid, which accrued during the year the

defendant's note and policy were in force, was more than could be collected on the notes of that department which were in force, and were liable for the losses and expenses of that year. In addition, the losses and expenses of the company were more than the stock and premium notes of all classes and dates would pay. When it appears to a receiver, from the liabilities of the company, and the times the liabilities accrued, and from an examination of all the classes and notes of the company, that there is no note that is not chargeable to its entire amount for liabilities which justly attached during the existence of the policy accompanying such note, a general assessment upon all the notes, without regard to classes, and to their full amount, is unobjectionable. All the notes of the company constituted its capital, whether they be in one department or another, and if the necessity exists, resort must be had to the entire fund. An assessment made to-day of one class to pay all the losses of that class, and an assessment to the residue of that class, at a future day, to pay the losses of another class, the assets of which are exhausted, would be idle and attended with unnecessary expense and delay, when the same could all be effected by one assessment. The defendant was liable to be assessed for losses occurring in the three classes of this company during the existence of his policy. If it required an assessment to the full amount of his note to pay such losses, the receiver could make it.

It is true that as his note was in the hazardous department, and his policy run for but one year, he was first liable to contribute for losses in that department, but if these losses did not exhaust his note, what was left was applicable to payment of losses in the other departments accruing during the year that his policy ran, and this was the precise condition of all the other premium note policy holders. The defendant, however, in this case, can not complain that the assessment was of the full amount of his note. It was proved, and the fact was distinctly found by the referee, that the ascertained losses accruing during the year that the defend-

ant's policy was in force, were more than could be collected on the notes of the hazardous department, which were in force and liable for the losses of that year.   The receiver was consequently justified in assessing the defendant's notes to the full amount, and it was not for him to object that the notes in other classes and of other dates than his own were assessed.

I am of the opinion that both assessments were valid, and that the plaintiff was improperly nonsuited.  The judgment of the Supreme Court should be reversed and a new trial ordered.

All the judges agreed to the validity of the last assessment.   Davies, Rosekrans and Balcom, JJ., concurred as to Eames' assessment, and Emott, Denio, Selden and Marvin, JJ., dissented from the opinion as to Eames' assessment.

Judgment reversed.